UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11CV135-RLV

| | |
|---|---|
| LFM REAL ESTATE VENTURES, LLC, ) | |
| BRIAN A. MOORE, MD, ) | |
| MICHELLE L. MOORE, ) | |
| EKACHAI LUCKTONG, MD, ) | |
| SUSAN D. STURGESS, ) | |
| MICHAEL K. FRYE, MD and ) | |
| JUDY L. FRYE, ) | |
| ) | |
| Plaintiffs, ) | **ORDER AND MEMORANDUM** |
| ) | |
| v. ) | |
| ) | |
| SUNTRUST BANK, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment on the Pleadings and accompanying memorandum, filed November 30, 2011. (Doc. 12). Also before the Court is Defendant's Motion for Judicial Notice of Subsequent Proceedings. (Doc. 15). These matters are ripe for disposition.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff LFM Real Estate Ventures, LLC ("LFM") and Individual Plaintiffs, Brian A. Moore, Michelle L. Moore, Ekachai Lucktong, Susan Sturgess, Michael K. Frye, and Judy L. Frye bring the instant cause of action against SunTrust Bank, Inc. for (1) fraud and misrepresentation, (2) self dealing and predatory lending, (3) breach of contract, (4) breach of fiduciary duty, and (5) unfair and deceptive trade practices. (Doc. 1-1 at pp. 9-11).

Plaintiff LFM Real Estate Ventures, LLC is a Limited Liability Corporation incorporated in North Carolina with its principal place of business in North Carolina.

1

(Doc. 1-1 at p. 4). Individual Plaintiffs are all residents of North Carolina. (Doc. 1-1 at p. 4). Defendant SunTrust Bank is incorporated in Georgia with a principal place of business in Atlanta, Georgia. (Doc. 1 at p. 2; Doc. 1-2 at p. 2). SunTrust is the successor to Central Carolina Bank ("CCB").

Plaintiffs allege the following facts: Around 2004, Plaintiffs began researching various real estate opportunities in Asheville, North Carolina and the surrounding areas. (Doc. 1-1 at p. 5). Plaintiffs eventually developed an interest in an undeveloped lot located in The Cliffs at Walnut Cove, a gated Jack Nicklaus Golf Course Community in Arden, North Carolina, which consists of higher-end custom homes. (Doc. 1-1 at p. 5).

Upon locating their subject property, Plaintiffs began contacting banks to inquire about financing options. (Doc. 1-1 at p. 5). After speaking with a number of banks that had expressed interest in financing the subject property, George Climber ("Climber") of Central Carolina Bank contacted Plaintiffs in his official capacity as a Vice President and agent of CCB. (Doc. 1-1 at p. 5). He advised Plaintiffs that his bank was willing to "meet or exceed any other offers made from any other banking institution." (Doc. 1-1 at p. 5).

After discussion and encouragement by Climber, Individual Plaintiffs spent approximately $1,000 to form an LLC, LFM Real Estate Ventures, which was specifically designed to protect the Individual Plaintiffs from individual liability. (Doc. 1-1 at p. 6). Plaintiffs then decided to purchase the subject property. (Doc. 1-1 at p. 5). Plaintiffs paid $795,000.00 for the undeveloped lot and an additional $75,000.00 for a membership in the golfing community, for a total price of $870,000.00. (Doc. 1-1 at p. 5). To finance the lot, LFM received a $870,000.00 loan from CCB, which was

evidenced by a promissory note dated June 18, 2004. (Doc. 5 at p. 11). The note was secured by a first priority lien on the property and evidenced by a Deed of Trust executed by LFM in favor of CCB. (Doc. 5 at p. 11).

Prior to entering into the agreement with CCB, Individual Plaintiffs agreed to personally guarantee the Note and Deed of Trust. (Doc. 1-1 at p. 6). When Individual Plaintiffs inquired into the purpose of this transaction, they were informed that this was a mere formality. (Doc. 1-1 at p. 6). Plaintiffs were never informed of the significance or potential risk associated with their guaranty, which each Plaintiff executed on June 18, 2004. (Doc. 5 at pp. 6, 11).

Prior to speaking with George Climber, Plaintiffs had made no firm purchasing decisions; however, after receiving "promises, assurances, and inducements" from Climber and CCB, Plaintiffs elected to purchase the subject property. (Doc. 1-1 at p. 5). Plaintiffs maintain that if not for these promises and inducements, they would not have purchased the property or agreed to the terms and conditions of the promissory note with CCB. (Doc. 1-1 at p. 6). Specifically Plaintiffs maintain that Defendant promised: (1) that the subject property was a sound investment likely to increase in value; (2) that CCB would finance 100 percent of the purchase price of the lot and golf membership; (3) that CCB would meet or exceed any offer of financing from any other banking institution that Plaintiffs contacted; (4) that CCB, realizing that the lot was unimproved real estate purchased as an investment property, would allow the Note to be carried at an interest rate lower than any other bank would offer; (5) that CCB would reduce the points charged at closing; (6) that CCB would work with Plaintiffs on the subject property and that Plaintiffs would have no problems obtaining renewals on the Note in the future on the same terms and conditions negotiated; and (7) that the signing of individual guarantors was a mere formality and that the lot's value was sufficient to cover

the debt incurred.  (Doc. 1-1 at pp. 5-6).

Plaintiffs state that Climber's inducements regarding "the financing at present and the future favorable financing of the subject property was the determining factor in the decision of the Plaintiffs to purchase the subject property."  (Doc. 1-1 at p. 6).  Plaintiffs maintain that since purchasing the property, they have at all times complied with all terms and conditions of the agreement entered into with CCB.  (Doc. 1-1 at p. 7).

Around 2007, CCB was acquired by Defendant SunTrust, who has since that time managed the Note and Deed of Trust on the subject property.  (Doc. 1-1 at p. 7).  After the acquisition, Plaintiffs have had an increasingly difficult time in renewing their loan according to the original terms.  (Doc. 1-1 at p. 7).  Plaintiffs have also found fault in several actions taken by Defendant.  For example, Plaintiffs note that their loan was transferred from the "wealth management" division of the bank to the "special assets" section, which handles what the bank deems to be troubled assets.  (Doc. 1-1 at p. 7).  Moreover, Plaintiffs contend that despite the national economic downturn, Defendant believed that the Plaintiffs' property had decreased in value "to the point that additional capacity or pay down was requested."  (Doc. 1-1 at p. 7).  Plaintiffs, however, maintain that this harsh treatment was contrary to the promises and inducements made by Defendant's predecessor, CCB.  (Doc. 1-1 at p. 7).

Plaintiffs also contend that Defendant had increasingly "made demands on Plaintiffs that were neither contemplated prior to the entry into the agreement . . . nor consistent with the terms and conditions agreed upon at the inception of the loan."  (Doc. 1-1 at p. 7).  Plaintiffs claim that Defendant threatened them with legal action if they did not comply with various requests to provide additional financial information on the individual guarantors.  (Doc. 1-1 at p. 8).  Plaintiffs claim that these threats amounted to a breach of contract.  (Doc. 1-1 at p. 8).

On or about September 2, 2011, Plaintiffs filed a civil action against SunTrust Bank, bearing file number 11-CV-02603, in Iredell County Superior Court. (Doc. 1 at p. 1). Plaintiffs claim that as a result of the aforementioned actions, they have suffered compensatory damages in an amount in excess of $10,000. (Doc. 1-1 at p. 12). Plaintiffs also seek to recover punitive damages in an amount in excess of $10,000 and seek treble damages for violations of the Unfair and Deceptive Trade Practices Act. (Doc. 1-1 at p. 12). Plaintiffs also seek all costs, including reasonable attorney's fees. (Doc. 1-1 at p. 12).

Upon receiving its Summons and Complaint on September 2, 2011, Defendant filed a timely notice of removal pursuant to 28 U.S.C. § 1441(a), as the case was within the original jurisdiction of the United States District Court pursuant to diversity jurisdiction under 28 U.S.C. §1332(a).[1] (Doc. 1 at p. 2). In response to Plaintiffs' Complaint, SunTrust filed an Answer and Counterclaims on October 13, 2011. (Doc. 5). SunTrust's first counterclaim alleges that LFM is in default of its loan for failing to pay the balance owed upon the Note's maturity. SunTrust's second counterclaim alleges that the Individual Plaintiffs, as guarantors, are in default for failing to make a $30,000.00 principal payment on the Note and for failing to provide SunTrust with financial statements and tax returns, as was required in the note and guaranties. (Doc. 5 at p. 16). SunTrust asserts it is entitled to recover $1,014,870.83 in damages. Plaintiffs filed a Reply to Defendant's Counterclaims on November 22, 2011. (Doc. 9).

On November 30, 2011, SunTrust filed a Motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c). SunTrust contends its motion should be granted because: (1) substantially all of the underlying facts are not in dispute and are admitted by

---

[1] In addition to a diversity of residency between all Plaintiffs and Defendant, the amount of controversy is reasonably expected to exceed $75,000.00 as the cause of action relates to an $870,000.00 loan given to Plaintiffs. (Doc. 1 at p. 2).

the parties in their pleadings; and (2) the alleged oral loan commitment for future loans is unenforceable as a matter of law pursuant to North Carolina's Statute of Frauds. (Doc. 12 at p. 1).

Plaintiffs' response to Defendant's Rule 12(c) motion was due December 19, 2011. After Plaintiffs failed to submit a response, the magistrate judge entered an order directing Plaintiffs to file a response on or before December 30, 2011. (Doc. 14). The Order expressly cautioned Plaintiffs that "failure to file a response is likely to lead to the relief requested by Defendant's motion being granted." (Doc. 14). Plaintiffs did not file a response to SunTrust's Motion for Judgment on the Pleadings.

On March 2, 2012, SunTrust filed a Motion for Judicial Notice of Subsequent Proceedings, pursuant to Rule 12 of the Federal Rules of Civil Procedure, Rule 201 of the Federal Rules of Evidence, and the equitable power and discretion of the court. (Doc. 15). SunTrust advised the Court in its filing that the real property had been foreclosed upon.[2]

On March 23, 2011, Plaintiffs filed a "Reply to Defendant's Motion for Judicial Notice of Subsequent Proceedings." (Doc. 16). Despite the document's heading, Plaintiffs seemingly used the document to argue that their Complaint "alleged sufficient facts to withstand the motion for judgment on the pleadings previously filed by the Defendants." (Doc. 16 at p. 1). To the extent that Plaintiffs' filing is a response to Defendant's Motion for Judgment on the Pleadings, it is untimely and it will not be

---

[2] A foreclosure sale took place on February 9, 2012, at which SunTrust was the highest bidder with a foreclosure credit bid of $362,950.00. (Doc. 15, Exhibit D). The sale remained open for 10 days and no upset bids were filed, thereby fixing SunTrust's rights in accordance with N.C.G.S. § 45-21.27. (Doc. 15, Exhibit D). SunTrust then successfully assigned its foreclosure bid to CRM Mid-Atlantic Properties, LLC, who assumed all obligations with respect to the bid. (Doc. 15, Exhibit D). SunTrust posits that any award in its favor should be offset in the amount of $362,950.00 as a result of the foreclosure sale.

considered by the court.[3]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." F<small>ED</small>. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party. *Bradley v. Ramsey*, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004) (internal citations removed). The court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations removed). Ultimately, judgment on the pleadings should be granted "if the movant is entitled to judgment as a matter of law." *Id*.

A Rule 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6) motions to dismiss, with the "key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint."[4] *Id.* (internal citations

---

[3] Plaintiffs' Reply also included a request for an extension of time to file a proper response to Defendant's Request for Judgment on the Pleadings. This request is denied. Plaintiffs claim that an "unfortunate series of events" occurred that prevented Plaintiffs' Counsel from filing a timely response. These unfortunate happenings include counsel's primary paralegal being injured and therefore unavailable to come into the office, as well as a crash of the office's server, which occurred at some unidentified date. (Doc. 16 at pp. 2-3). These excuses fail to satisfy the burden established in FED. R. Civ. P. 6(b)(1)(B) as they do not demonstrate that counsel "failed to act because of excusable neglect." The Fourth Circuit has noted that "[e]xcusable neglect is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996). The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). In the instant case, Plaintiffs' counsel did not request an extension of time until approximately three months after Plaintiffs' reply was due. Counsel did not provide dates for either of the "unfortunate events" that allegedly prevented him from timely filing, nor did he attest that he did all that he could reasonably do to comply with the filing deadline.

[4] Under Rule 12(b)(6) motions, "a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386

removed); *see also* Fed. R. Civ. Pro. 10(c); *Taylor v. Hobbs*, No. 5:11–CT–3100–D, 2012 WL 4486272 at *1 (E.D.N.C. Sept. 28, 2012) (noting that in addition to the answer, the court should also consider any documents attached to the pleadings or incorporated by reference and any matters of which the court may take judicial notice).

### III. ANALYSIS

1. **Fraud and misrepresentation**

Plaintiffs allege that Defendant, through its agent George Climber, committed fraud. The essential elements for actionable fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party."[5] *Ragsdale v. Kennedy,* 209 S.E.2d 494, 500 (N.C. 1974) (citations omitted). "Additionally, reliance on alleged false representations must be reasonable." *State Properties, LLC v. Ray,* 574 S.E.2d 180, 186 (N.C. App. 2002).

In this case, Plaintiffs claim that George Climber's oral promise to provide LFM with loan money for an indefinite time on an interest-only basis amounted to fraud because he knew at the time that CCB had "no intention of making such loans and that their failure to do so would have a devastating effect upon the Plaintiffs." (Doc. 1-1 at p. 9). Plaintiffs further claim that the acts and omissions on the part of Climber were "intended to deceive or mislead the Plaintiffs and did in fact deceive and mislead the Plaintiffs to their detriment." (Doc. 1-1 at p. 9). Plaintiffs conclude that Climber's

---

(4th Cir. 2009). A complaint is facially plausible when the plaintiff "pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

[5] To establish fraud, the plaintiff must satisfy North Carolina's particularity requirement, which can be accomplished "by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry,* 273 S.E.2d 674, 678 (N.C. 1981); N.C. Gen. Stat. § 1A–1, Rule 9(b).

actions and omissions "constituted fraud in the factum and but for said representations . . . Plaintiffs would not have entered into the loan agreements or purchased the subject property." (Doc. 1-1 at p. 9). Plaintiffs' claims, however, fail for several reasons, considered *infra*.

### a. Statute of Frauds / Parol Evidence Rule

Prior to considering whether Plaintiffs have established a *prima facie* case of fraud, it is first necessary to consider whether George Climber's purported oral promises may be considered by the court under North Carolina's Statute of Frauds and parol evidence rules. Generally speaking, the parol evidence rule "prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement." *Thompson v. First Citizens Bank & Trust Co.*, 567 S.E.2d 184, 188 (N.C. App. 2002) (citing *Harrell v. First Union Nat. Bank,* 334 S.E.2d 109, 110 (N.C. App. 1985), *aff'd,* 316 N.C. 191, 340 S.E.2d 111 (1986)). In situations "where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed [that] the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." *Neal v. Marrone,* 79 S.E.2d 239, 242 (N.C. 1953). As such, "all prior and contemporaneous negotiations . . . are deemed merged in the written agreement" and "parol testimony [concerning] prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and difference contract from the one evidenced in the writing, is incompetent." *Franco v. Lipoiscience, Inc.,* 676 S.E.2d 500, 507 (N.C. App. 2009).

In the instant case, the relevant parol evidence is comprised of the statements allegedly made by George Climber prior to the signing of the original note and guaranties in 2004. The note and guaranties represented the final, written agreements

9

between the parties and contained merger clauses that indicated that the written documents represented complete, final and exclusive agreements.[6] Therefore, pursuant to the parol evidence rule, the oral statements made by George Climber prior to the signing of the note and guaranties will not be considered by the court.[7]

In addition to the parol evidence rule, North Carolina's Statute of Frauds prevents the Court from considering Climber's allegedly fraudulent oral statements. Pursuant to N.C.G.S. §22-5, "no commercial loan commitment by a bank . . . for a loan in excess of fifty thousand dollars . . . shall be binding unless the commitment is in writing and signed by the party to be bound." N.C.G.S. § 22-5. In the case at bar, the loan agreement was reduced to writing; however, George Climber's statements offering an indefinite interest-only repayment was not. According to the above statute, these oral commitments would be non-binding as they related to a $870,000.00 commercial loan. Because Plaintiffs cannot enforce Climber's oral promises regarding the terms of the loan, Plaintiffs should not be able to assert tort liability arising out of the same oral promises.

In *Mark Andrew of The Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.*, the Southern District of New York considered whether alleged oral representations that a defendant made during the course of negotiations could enable a

---

[6] The Note's merger clause stated that "[t]his Note constitutes a complete, final and exclusive agreement between Borrower and CCB; all prior negotiations have been merged into this Note." (Doc. 12 at p. 4; Exhibit A). The 2004 Guaranty's merger clause stated that the guaranty "constitutes a complete, final and exclusive agreement between Guarantor and CCB, concerning this Guaranty. All prior negotiations, concerning this Guaranty, have been merged into this Guaranty." (Doc. 12 at p. 4).

[7] There are, however, narrow circumstances in which the court may permit the consideration of otherwise inadmissible parol evidence. One such circumstance allows the court to hear parol evidence upon evidence or proof of fraud. *See Thompson*, 567 S.E.2d at 188 (noting that it is "assumed the [parties] signed the instrument they intended to sign[,] . . . [and, absent] evidence or proof of mental incapacity, mutual mistake of parties, undue influence, or fraud[,] . . . the court [does] not err in refusing to allow parol evidence."). While Plaintiffs have provided specific details regarding Climber's alleged fraudulent statements, the Court remains unconvinced that Plaintiffs' reliance upon Climber's statements was reasonable, as is considered *infra*.

plaintiff to recover tort damages, even if the underlying contract was unenforceable due to the statute of frauds. 265 F.Supp.2d 366, 382 (S.D.N.Y. 2003). The court held that:

> Because the statute of frauds prohibits the plaintiffs from enforcing this alleged oral contract, the plaintiffs are also prohibited from recovering on tort claims, including claims for fraud and negligent misrepresentation, that seek damages based on the same conduct and representations that are merely derivative of their claim for breach of an oral contract.

*Id.*; *see also Wachovia Bank, N.A. v. Preston Lake Homes, LLC*, 750 F.Supp.2d 682 (W.D.Va. 2010). *But see, Deerborne Cottages, LLC v. First Bank*, No. 1:11cv1782012 WL 1835240, at *6 (W.D.N.C. Apr. 9, 2012) (noting that as a matter of law neither the statute of frauds nor the parol evidence rule bars a plaintiff's tort claims alleging affirmative misrepresentation during precontractual negotiations). In the instant case, Climber's alleged oral promises are barred by the Statute of Frauds pursuant to N.C.G.S. § 22-5. As in *Mark Andrew of The Palm Beaches, Ltd.*, Plaintiff's breach of contract and fraud claims are based on the same conduct: Climber's oral promises of an indefinite interest-only loan. Therefore, Plaintiffs are prohibited from recovering on their claim of fraud.

### b. Plaintiffs' Second Renewal Constituted A Waiver

Alternatively, Plaintiffs' fraud claim must be dismissed because Plaintiffs effectively waived their right to enforce Climber's allegedly fraudulent oral promises by entering into new agreements with Defendant that modified the terms and conditions of the previous agreements. In its Answer, Defendant clarifies the progression and scope of the parties' business relationship. According to SunTrust, the original note negotiated by Climber was for a three-year term with a maturity date of June 18, 2007. (Doc. 5 at p. 11). As the maturity date approached, both parties agreed to an extension until September 17, 2007. (Doc. 5 at p. 11). In September, Defendant again agreed to renew the loan with a new maturity date of March 14, 2009. (Doc. 5 at p. 12). LFM then executed a new

Commercial Note on September 14, 2007, evidencing the terms and conditions of the renewal.  (Doc. 5 at p. 12; Exhibit I).

In 2009 LFM approached Defendant about a further renewal.  SunTrust informed LFM that "it [was] not customary for the bank to carry a lot on an interest only basis longer than 3 years without intent to build on the property or to term the property out with principal and interest payments."  (Doc. 5 at p. 12; Exhibit J).  Despite this, as a customer accommodation to LFM, SunTrust agreed to another two-year extension ("Second Renewal").  (Doc. 5 at p. 12).  During negotiations, however, SunTrust, informed LFM that the Second Renewal would be the last interest-only extension of the loan.  (Doc. 5 at p. 12).  SunTrust also conditioned the extension on LFM's obligation to pay down the principal amount of the debt by at least $30,000 during the term of the loan.  (Doc. 5 at p. 12).  LFM agreed to these terms and executed a Commercial Note on May 15, 2009, which evidenced a new maturity date of May 15, 2011.  (Doc. 5 at p. 12; Exhibit K).  Additionally, Individual Plaintiffs executed a new "Unconditional Guaranty" of all obligations owed by LFM to SunTrust.  (Doc. 5 at p. 13).

On May 15, 2011, the Note matured on its own terms, and LFM and Individual Plaintiffs defaulted by failing to pay the outstanding principal and accrued interest and by failing to make the $30,000.00 payment on the principal.  (Doc. 5 at p. 14).   As of October 11, 2011, the outstanding balance due was $882, 558. 33.  (Doc. 5 at p. 15).

SunTrust's statement of the facts indicates that even if there was an initial fraud, Plaintiffs effectively waived SunTrust's obligation to honor Climber's promises by entering into new written agreements regarding the loan.  By entering into these agreements, Plaintiffs knowingly accepted the new terms and conditions, including Defendant's condition that its previous interest-only loan repayment plan would expire at the end of the Plaintiffs' two-year extension.

### c. Plaintiffs Cannot Demonstrate Reasonable Reliance

Finally, Plaintiffs do not allege facts establishing a *prima facie* case of fraud because they cannot show reasonable reliance. In an action for fraud "[r]eliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Sullivan v. Mebane Packaging Group, Inc.,* 581 S.E.2d 452, 458 (2003) (citation omitted). While the reasonableness of a litigant's reliance is generally a question for the jury, this is not always the case. *Nw. Bank v. Roseman*, 344 S.E.2d at 126; *Sullivan v. Mebane Packaging Group, Inc.*, 581 S.E.2d 452, 458 (N.C. App. 2003) (noting that "the reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion") (internal citations omitted). In the case at bar, it is worth noting that the reasonableness of Plaintiffs' reliance upon Climber's statements is highly questionable. By all accounts Plaintiffs are sophisticated men and women, yet they maintain that it is reasonable to believe that a bank would offer an indefinite interest-only loan for a sum of $870,000.00. As previously noted, however, Plaintiffs have not convinced the court, as a matter of law, that their reliance upon Climber's statements was reasonable.

2. **Self-dealing and Breach of fiduciary duty**

Plaintiffs claim that Defendant is in violation of its fiduciary duties to protect customers, namely because Defendant allowed Plaintiffs to proceed with a course of action that benefitted the bank's interest at the expense of Plaintiffs. (Doc 1-1 at p. 10). Specifically, Plaintiffs claim that Defendant breached this fiduciary relationship by (1) engaging in fraud, misrepresentation, coercion and/or undue influence to obtain concessions from Plaintiffs; (2) failing to honor the promises and agreements made to or with the Plaintiffs to induce them to enter into the initial agreement with the Defendant's predecessor; (3) refusing to deal in good faith with Plaintiff; and (4) breaching the duty of

maintaining confidentiality on one or more occasions. (Doc. 1-1 at p. 11). Plaintiffs also claim that the acts and omissions on the part of Defendant constitute self-dealing as they were designed to protect the interests of the bank at the expense of Plaintiffs. (Doc. 1-1 at p. 10).

For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties. *Dalton v. Camp,* 548 S.E.2d 704, 707 (N.C. 2001). A fiduciary relationship has been broadly defined by the North Carolina Supreme Court to mean a relationship in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id*. at 707. The Court further noted that the relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*" *Id*. at 707-08 (emphasis in original, citation omitted).

While the Court has recognized that an ordinary debtor-creditor relationship generally does not give rise to a fiduciary relationship, the court did not go so far as to say that a bank-customer relationship will never give rise to a fiduciary relationship "given the proper circumstances." *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 699 (1992) (citation omitted) (noting that "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.").

In their complaint, however, Plaintiffs alleged no special confidence or relationship with Defendant that would render their relationship different from the typical creditor-debtor relationship. Plaintiffs merely allege that at all relevant times Defendant owed them a fiduciary duty to act in good faith in their dealing. (Doc. 1-1 at p. 11). Plaintiffs' asserted characterization of their relationship with Defendant is thus

insufficient to establish a breach of fiduciary duty. Moreover, Plaintiff's factual allegations do not describe a situation in which CCB exerted dominion and influence over Plaintiffs as Plaintiffs were free to contract with other parties and did in fact consult with other banks prior to entering into a loan agreement with CCB.

### 3. Breach of contract

To establish a breach-of-contract claim, a plaintiff must plead facts sufficient to demonstrate (1) a valid and enforceable contract and (2) the breach of specific contractual provisions resulting in damage. *PTI Assoc., LLC v. Carolina Int'l Sales Co., Inc.*, No. 3:10CV108-RJC-DSC, 2011 WL 940725, at *2 (W.D.N.C. Jan. 3, 2011).

Plaintiffs claim that Defendant breached its contract by "increasing the interest and attempting to change the terms of the agreement." (Doc. 1-1 at p. 10). Plaintiffs also claim that Defendant breached its contract by demanding financial information, such as personal financial statements and tax returns, from the Individual Plaintiffs.

As has been previously noted, it is likely that the Statute of Frauds and North Carolina's parol evidence rule will prevent the court from considering Climber's allegedly fraudulent oral statements. However, even assuming the admissibility of Climber's alleged oral promises, Plaintiffs effectively waived Defendant's obligation to honor those promises by entering into a new agreement, the Second Renewal, with Defendant. In this agreement, Defendant specifically stated that there would not be another interest-only loan extension. *See* Exhibit J (noting that "at renewal we will offer a loan of principal plus interest payments to amortize the lot after the 2 year period."). Moreover, the Second Renewal contained a new merger clause that stated, "the terms and conditions of the Agreement and the terms of conditions of the Note constitute the entire agreement between the Borrower and SunTrust." (Doc. 5 at p. 13; Exhibit L). Plaintiffs consented to these terms and signed the Second Renewal.

The Second Renewal also contained a clause which stated that "Guarantor agrees to provide to SunTrust updated personal financial information, including, but not limited to, tax returns and current financial statements . . . all as SunTrust may from time to time request." (Doc. 5 at p. 13; Exhibits B-G). As such, Defendant's requests for such information does not amount to a breach of contract, and Plaintiffs' breach-of-contract claim is dismissed.

### 4. Unfair and deceptive trade practices

To establish a *prima facie* cause of action for a violation of the unfair and deceptive trade practices act a litigant must establish that: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton,* 548 S.E.2d at 711. Whether a particular practice violates the UDTPA is typically a question of law for the court. *Id.*

UDPTA claims are often based either on an underlying breach-of-contract claim or a claim of affirmative fraud or misrepresentation. When a claim for unfair and deceptive trade practices is premised on a party's breach of contract, substantial aggravating factors must be shown to accompany the underlying breach. *McManus v. GMRI, Inc.*, No, 3:12-CV-009-DCK, 2012 WL 2577420, at *5 (W.D.N.C. July 3, 2012); *Pan-American Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 700 (M.D.N.C. 2011) (citation omitted) (noting that the plaintiff must allege "some type of egregious or aggravating circumstances before the [UDPTA] applies."). The courts have found that aggravating factors may include intentional misrepresentation for the purpose of deceiving or injuring another or actions that rise to the level of fraud. *Baldine v. Furniture Comfort Co.*, 956 F. Supp. 580, 587–88 (M.D.N.C. 1996); *McManus*, 2012 WL 2577420, at *5. Fraudulent statements relied upon earlier in the complaint may be

sufficient to support a UDPTA claim. *TSC Research, LLC v. Bayer Chem. Corp.*, 552 F.Supp.2d 534, 546 (W.D.N.C. 2008).

When a UDPTA claim is based upon on a theory of misrepresentation or fraud, "a plaintiff must show that a defendant's words or conduct possessed the tendency or capacity to mislead or create the likelihood of deception." *Deerborne Cottages, LLC v. First Bank*, No. 1:11cv178, 2012 WL 1835240, at *6 (W.D.N.C. Apr. 9 2012) (citations omitted).

In making their UDPTA claim, Plaintiffs incorporate all their Complaint's previous arguments and contend that Defendant's acts and omissions constituted fraud and misrepresentation, which are unfair and deceptive trade practices pursuant to N.C. Gen. Stat. 75-1.1 *et seq*. (Doc. 1-1 at p. 11). It is somewhat unclear whether Plaintiffs' claim is premised on their breach-of-contract or fraud claims, as Plaintiffs' Complaint raises both allegations, and, as have previously noted, both of Plaintiffs' claims allege the same underlying facts. In either case, however, Plaintiffs' UDPTA claim will fail.

If Plaintiffs' UDPTA claim is based upon their underlying breach-of-contract claim, the claim will necessarily fail as it is derivative of Plaintiffs' breach-of-contract claim. As this court has previously dismissed Plaintiffs' breach-of-contract claim after finding that Plaintiffs have not established a *prima facie* case, Plaintiffs UDPTA claim must likewise be dismissed.

Similarly, if Plaintiffs' UDPTA claim is based upon fraud and affirmative misrepresentations, the claims will nonetheless fail. This court has already determined that Plaintiffs fraud claim cannot go forward. The court noted that not only did N.C.G.S. §22-5 bar Plaintiffs from bringing a tort claim based upon an unenforceable contract, Plaintiffs' reliance upon Climber's allegedly fraudulent statements was unreasonable and effectively waived upon the parties' formation of new contractual obligations. As such,

Plaintiffs' UDPTA claim is dismissed.

## IV. ORDER

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED**. Defendant's Motion for Judicial Notice of Subsequent Proceeding is likewise **GRANTED**.

Signed: December 7, 2012

Richard L. Voorhees
United States District Judge